## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HORIZON HOUSE, INC., | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| EAST NORRITON TOWNSHIP, | : | NO.  19-1252 |
| **Defendant.** | : | |

DuBois, J.                                                             April 17, 2020

### M E M O R A N D U M

### I.    INTRODUCTION

This case arises out of plaintiff Horizon House, Inc.'s attempt to establish a "Community Home" for disabled residents in defendant East Norriton Township.  Plaintiff was denied a Use and Occupancy permit after defendant's Zoning Officer and Zoning Hearing Board determined that plaintiff's proposed use fell within the Zoning Ordinance's definition of a "Group Home," which necessitated satisfying additional conditions.  On January 31, 2019, plaintiff filed an Amended Complaint, asserting claims of disparate impact and disparate treatment under the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3601 *et seq.*, the Rehabilitation Act ("RA"), 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and for denial of reasonable accommodation under the ADA and FHAA.  Presently before the Court is defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons that follow, the Motion is granted in part and denied in part.

### II.    BACKGROUND

The facts as alleged in the Amended Complaint are as follows.  Plaintiff, Horizon House, Inc., is a Pennsylvania non-profit corporation that owns and operates properties that provide residential services for persons with intellectual and developmental disabilities.  Am. Compl. ¶ 3.

Among the residential services operated by plaintiff are "Community Homes for Individuals with Intellectual Disabilities," which are licensed and regulated by the Commonwealth of Pennsylvania.  *Id.* ¶ 5.

On December 10, 2018, plaintiff signed an agreement to purchase a single-family detached dwelling located at 2921 Stoney Creek Road in East Norriton Township, Pennsylvania. *Id.* ¶ 19.  Plaintiff plans to use the house as a Community Home for up to three disabled people. *Id.* ¶ 36.  The Stoney Creek Road property is located within a zoning district designated as "BR-1" by defendant's Zoning Ordinance.  *Id.* ¶ 23.  Permitted uses in a BR-1 district include a "single-family detached dwelling."  East Norriton, Pennsylvania, Zoning Ordinance [hereinafter ZO] § 205-24.[1]  The term "family" is defined under the Ordinance as:

> Any number of individuals related by blood or marriage, including adopted children, foster children or minor children under the legal custody of an adult, living together as a single nonprofit housekeeping unit and doing their cooking on the premises on a single cooking facility; including two gratuitous guests.  Family shall exclude, however, occupants of a club, fraternity house, lodge, residential club or rooming house.  Family shall be deemed to include unrelated persons with disabilities living together as a functional family equivalent.[2]

*Id.* § 205-5.

In contrast, "Group Homes" are only permitted by special exception in a BR-1 district.

*Id.* § 205-21.  A "Group Home" is defined under the Ordinance as:

> A residential facility used as living quarters by any number of unrelated persons requiring special care, specifically designed to create a residential setting for the mentally and physically

---

[1] The Court may consider defendant's Zoning Ordinance when evaluating the Motion, as the Ordinance is incorporated by reference in plaintiff's Amended Complaint.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders [and] items appearing in the record of the case.").

[2] Defendant erroneously quotes this provision as including unrelated persons with disabilities living together as a "functional family unit."  Mot. Dismiss 3.  This appears to be a distinction without a difference.

> handicapped.  The individuals may be either transient or permanent residents.  Any number of handicapped persons, as defined in Title VII of the Civil Rights Act f 1968, as amended by the Fair Housing Amendments Act of 1988, have the right to occupy a dwelling unit in the same manner and to the same extent as any family unit.

*Id.* § 205-5.  In order to obtain a special exception, a Group Home must satisfy certain conditions—it must have a fire sprinkler system, a fire alarm system, a minimum of four off-street parking spaces, at least one staff person in the home at all times, and the owner must provide to defendant a description of the disability of each resident.  *Id.* § 205-21.  These are the conditions about which plaintiff complains.  Am. Compl. ¶ 31.

On December 4, 2018, the previous owner of the Stoney Creek Road property applied to defendant for a Use and Occupancy Permit pursuant to its sale agreement with plaintiff.  Am. Compl. ¶ 41.  In response, defendant's Zoning Officer denied the permit, concluding that plaintiff's intended use for the house was a Group Home.  *Id.* ¶ 42.  Plaintiff subsequently communicated with defendant's Zoning Officer and Solicitor, who confirmed defendant's position that plaintiff's proposed use was considered a Group Home and that plaintiff was required to obtain a special exception.  *Id.* ¶ 44.

On March 8, 2019, plaintiff submitted an application with defendant for a Certificate of Occupancy, as required by the Pennsylvania Department of Human Services before plaintiff could move the residents into the Stoney Creek Road property.  *Id.* ¶ 48.  Plaintiff's application was denied on March 13, 2019.  *Id.* ¶ 50.  Plaintiff subsequently initiated this action and filed a Motion for Preliminary Injunction (Document No. 2) on March 25, 2019.

On May 9, 2019, Defendant filed a Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Document No. 7).[3]  The case was subsequently stayed by

---

[3] Defendant's first Motion to Dismiss was denied as moot on March 25, 2020 (Document No. 31) after plaintiff filed its Amended Complaint.

3

Order dated June 11, 2019, to allow plaintiff to seek a hearing before defendant's Zoning Hearing Board.  The case remained stayed until December 16, 2019, when plaintiff reported that the Board had denied plaintiff's requested relief (Document No. 19).

Plaintiff filed an Amended Complaint on January 31, 2020 (Document No. 22).  Count I of the Amended Complaint alleges disparate impact under the FHAA, ADA, and RA.  Count II alleges disparate treatment under the FHAA, ADA, and RA.  Count III alleges denial of reasonable accommodation under the FHAA and ADA.

On February 14, 2020, defendant filed a Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Document No. 24).  Plaintiff responded on March 13, 2020 (Document No. 29).  On March 20, 2020, defendant filed a Reply (Document No. 30).

The Motion is thus ripe for decision.

### III.   LEGAL STANDARD

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint.  *Liou v. Le Reve Rittenhouse Spa, LLC*, No. CV 18-5279, 2019 WL 1405846, at *2 (E.D. Pa. Mar. 28, 2019).  To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  In assessing the plausibility of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007).  Such allegations are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S.

4

at 679.  The Court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680.  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  Nevertheless, a court may dismiss a claim with prejudice based on "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment."  *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

## IV.   DISCUSSION

Courts apply the same analysis to claims brought under the FHAA, ADA, and RA.  *See Sharpvisions, Inc. v. Borough of Plum*, 475 F. Supp. 2d 514, 521 n.2 (W.D. Pa. 2007) ("Because all of these laws provide bases for challenging disability-based housing discrimination, the legal analysis under the [FHAA] is therefore equally applicable to plaintiff's [ADA and RA] claims.").  Accordingly, the Court will confine its analysis to the FHAA.

The FHAA prohibits discrimination in the sale or rental, or otherwise making unavailable or denying, "a dwelling to any buyer or renter because of a handicap" and requires "reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f).  Courts have identified "three different types of claims against municipal land use

5

authorities under the FHAA": (1) disparate treatment, (2) disparate impact, and (3) failure to make reasonable accommodations.  *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Tp. of Scotch Plains*, 284 F.3d 442, 448 n.3 (3d Cir. 2002).

In its Motion to Dismiss, defendant contends that plaintiff's Amended Complaint fails to state plausible claims for disparate treatment, disparate impact, and denial of reasonable accommodations.  Mot. Dismiss 16-25.  The Court will address each argument in turn.

### A.  Disparate Treatment

Defendant argues that plaintiff cannot establish a claim for disparate treatment because the Ordinance's definition of "family" provides "a special allowance for individuals with disabilities" to live as a "functional family equivalent" that is not available to unrelated, non-disabled individuals.  Mot. Dismiss 20-21.  The Court disagrees.

To state a claim for disparate treatment under the FHAA, a plaintiff must allege either that "a discriminatory purpose was a motivating factor behind the challenged action, or that a challenged regulation is facially discriminatory."  *NHS Human Servs. v. Lower Gwynedd Tp.*, No. 11–2074, 2012 WL 170740, at *8 (E.D. Pa. Jan. 20, 2012).  Regardless of how the claim is framed, "the most fundamental element of the claim is that plaintiff must demonstrate that defendant's alleged discrimination was 'because of a handicap.'"  *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 178 (3d Cir. 2005) (quoting 42 U.S.C. § 3604(f)(2)).  The plaintiff "need not show that defendants acted with malice or discriminatory animus," *Sharpvisions*, 475 F. Supp. 2d at 523, but instead need only show that a "protected characteristic played a role in the defendant's decision to treat [it] differently," *Cmty. Servs.*, 421 F.3d at 177.

Both parties discuss in their briefs whether plaintiff has established a prima facie case of disparate treatment.  Mot. Dismiss 25; Resp. 23.  The parties correctly state that courts apply the

*McDonnell Douglas* framework in evaluating FHAA claims, under which the Court first considers whether the plaintiff has established a prima facie case before shifting the burden to the defendant to "justify the disparate treatment." *Sharpvisions*, 475 F. Supp. 2d at 523. However, the *McDonnell Douglas* framework is an evidentiary standard and courts do not apply it at the pleading stage. *Cf. Boyle v. City of Phila.*, No. 17-262, 2018 WL 994218, at *4 (E.D. Pa. Feb. 20, 2018) (DuBois, J.) (refusing to apply the *McDonnell Douglas* framework at the pleading stage in the context of Title VII discrimination claims). As such, the burden on plaintiff at this stage is less onerous. [4]

Plaintiff has alleged that defendant's statutory scheme is facially discriminatory and that the residents' protected characteristic—their disabled status—played a role in defendant's decision to classify the proposed use as a "Group Home." Courts have consistently held that "statues that single out for regulation group homes for the handicapped are facially discriminatory." *Larkin v. State of Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 290 (6th Cir. 1996); *see also Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1500 (10th Cir. 1995) (holding that where statutes "facially single out the handicapped and apply different rules to them…the discriminatory intent and purpose…are apparent on their face."). Regardless of the Ordinance's preferential treatment of unrelated disabled individuals over unrelated non-disabled individuals, the definition of "Group Homes" singles out for regulation facilities "specifically designed to

---

[4] In ruling on a motion to dismiss, the Court cannot consider the justification for the Ordinance. It is nonetheless significant that courts in the Third Circuit have required such a justification to "serve, in theory and practice, a legitimate, bona fide interest of the…defendant, and the defendant must show that no alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact." *Dr. Gertrude A. Barber Center, Inc. v. Peters Tp.*, 273 F. Supp. 2d 643, 656 (W.D. Pa. July 2, 2003) (citing *Resident Advisory Board v. Rizzo*, 564 F.2d 126, 149 (3d Cir. 1977)). Courts outside this Circuit have further held that defendants may justify disparate treatment by showing either "(1) that the ordinance benefits the protected class or (2) that it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes." *Children's All. v. City of Bellevue*, 950 F. Supp. 1491, 1497 (W.D. Wash. 1997). These issues will be addressed after completion of discovery at the summary judgment stage and/or at trial.

create a residential setting for the mentally and physically handicapped."  ZO § 205-5.

Accordingly, the Court concludes that plaintiff has stated a plausible claim for disparate

treatment based on a facially discriminatory regulation.

The Court thus denies that part of defendant's Motion which seeks dismissal of plaintiff's

disparate treatment claim.  This ruling is without prejudice to defendant's right to raise the issue

after completion of discovery by motion for summary judgment and/or at trial if warranted by

the facts and applicable law as stated in this Memorandum.

### B.  Disparate Impact

Defendant contends that, because the Ordinance "provides more opportunities to disabled

individuals [than] it does non-disabled individuals," plaintiff has no plausible claim for disparate

impact.  Mot. Dismiss 18, 20.  The Court disagrees.

Plaintiffs advancing a disparate impact claim under the FHAA must allege: "(1) the

occurrence of certain outwardly neutral practices, and (2) a significantly adverse or

disproportionate impact on persons of a particular type produced by the defendant's facially

neutral acts or practices." *Lapid-Laurel*, 284 F.3d at 467 (quoting *Gamble v. City of Escondido*,

104 F.3d 300, 306 (9th Cir. 1997)).[5]  Courts in this Circuit have held that zoning ordinances

which exclude residents in need of care from the definition of "family" have a disparate impact

on disabled residents.  *See Sharpvisions*, 475 F. Supp. 2d at 525-26.  In *Sharpvisions*, the court

held that a borough had "restricted the ability of a person with disabilities from establishing

_____

[5] Although this Court does not address at this stage of the proceedings the question whether plaintiff can establish a prima facie case of disparate impact, it notes that typically "a disparate impact is demonstrated by statistics, and a prima facie case may be established where gross statistical disparities can be shown."  *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 382 (3d Cir. 2011) (internal quotations omitted).  As with disparate treatment claims, "[i]f a plaintiff establishes a prima facie case,…a defendant then must show that it had legitimate non-discriminatory reasons for its actions and that no less discriminatory alternatives were available." *NHS Human Servs.*, 2012 WL 170740, at *9.

single-family residence in a home of his or her choosing" by categorizing facilities in which individuals lived with staff assistants as "Group Homes."  *Id.* at 517, 524.

The Court concludes that plaintiff has plausibly alleged that defendant's application of its Zoning Ordinance has a disparate impact on individuals with disabilities.  In its Amended Complaint, plaintiff alleges that, despite "facially neutral language" in the Zoning Ordinance's definition of "family," unrelated disabled residents are more likely to reside together and more likely to require care, allowing defendant to "classify nearly every living arrangement for handicapped individuals as a Group Home."  Am. Compl. ¶¶ 77, 83, 85.  Plaintiff therefore plausibly alleges that, as applied, defendant's ordinance has a greater adverse impact on disabled individuals than on the non-disabled.

The Court thus denies that part of defendant's Motion which seeks dismissal of plaintiff's disparate impact claim.  This ruling is without prejudice to defendant's right to raise the issue after completion of discovery by motion for summary judgment and/or at trial if warranted by the facts and applicable law as stated in this Memorandum.

### C.  Reasonable Accommodations

"[T]o establish a claim of refusal to make reasonable accommodations, a plaintiff 'need only plausibly plead enough facts to make out the three elements set forth in § 3604(f)(3)(B): refusal, reasonable accommodation, and necessity/equal opportunity.'"  *Wartluft v. Milton Hershey Sch. & Sch. Tr.*, 400 F.Supp.3d 91, 105-106 (M.D. Pa. 2019) (quoting *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111 (3d Cir. 2018)).  "Necessity" under the FHAA is understood to mean that, but for the accommodation, the disabled person would be denied an "equal opportunity to use and enjoy her dwelling."  *Vorchheimer*, 903 F.3d at 105.  "[T]he [FHAA's] necessity element requires that an accommodation be essential, not just preferable."

9

*Id.* at 107.

The only facts alleged in support of plaintiff's claim for denial of reasonable accommodation are additional "costs and delays" associated with satisfying the conditions required for a "Group Home."  Am. Compl. ¶ 99.  Plaintiff specifically alleges that the "requirements will add…costs of approximately $40,000.00 to the home…none of which will be paid for by HHI's government funding agencies."  *Id.* ¶¶ 32, 57.  On the basis of these alleged facts, plaintiff requests that defendant "waive the…conditions for obtaining a Special Exception for a Group Home."  *Id.* ¶ 99.

Courts have held that, to establish necessity, plaintiffs must show that the requested accommodation is "required" to make the proposed use "financially viable or medically effective."  *Vorchheimer*, 903 F.3d at 109 (quoting *Lapid-Laurel*, 284 F.3d at 109).  In this case, plaintiff has not plausibly alleged that the requested waiver of all conditions was required to make their Community Home financially viable.  Rather, they have merely alleged that, without accommodation, they will suffer "additional costs and delays."  Am. Compl. ¶ 99.  As such, plaintiff has alleged only that the accommodation is preferable rather than essential.  The Court thus grants defendant's Motion to the extent it seeks dismissal of plaintiff's claim for denial of reasonable accommodation in Count III and dismisses that claim.  The dismissal is without prejudice on the ground that the Court does not find that amendment of plaintiff's denial of reasonable accommodation claim would be futile.

V.    **CONCLUSION**

For the foregoing reasons, defendant's Motion to Dismiss is granted in part and denied in part.  The Court denies without prejudice that part of defendant's Motion seeking dismissal of plaintiff's disparate treatment and disparate impact claims.  The Court grants that part of

defendant's Motion seeking dismissal of plaintiff's denial of reasonable accommodation claim and dismisses that claim without prejudice to plaintiff's right to file within fourteen (14) days a second amended complaint asserting that claim if warranted by the facts and applicable law as set forth in this Memorandum.  An appropriate Order follows.