```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HORIZON HOUSE, INC.              :        CIVIL ACTION
                                 :
     v.                          :
                                 :
EAST NORRITON TOWNSHIP           :        NO. 19-1252
```

MEMORANDUM

Bartle, J.                                          July 25, 2022

    Plaintiff Horizon House, Inc. has sued defendant East Norriton Township under the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. §§ 3601 et seq., the Americans with Disabilities Act, 42 U.S.C. §§ 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 et seq.  Horizon House asserts that the Township violated these statutes when it required Horizon House to obtain a special exception under its zoning ordinance for Horizon House's proposal to house and provide supportive services for individuals with disabilities in a single-family dwelling.[1]  Horizon House's complaint seeks injunctive relief, compensatory damages, nominal damages, and attorneys' fees.  Before the court are the cross-motions of Horizon House and the Township for summary judgment on the

---

1. The court applies the same analysis to Horizon House's claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act as it does to claims under the FHAA. See, e.g., Barnabei v. Chadds Ford Twp., 125 F. Supp. 3d 515, 519 n.7 (E.D. Pa. 2015).

question of liability pursuant to Rule 56 of the Federal Rules of Civil Procedure.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). The court views the facts and draws all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

When briefing a motion for summary judgment and response, the parties must support each factual assertion or dispute with either a citation to the record or by showing that the materials cited do not establish the absence or the presence of a disputed fact. Fed. R. Civ. P. 56(c)(1). The court need consider only the materials cited by the parties in the summary judgment record. Fed. R. Civ. P. 56(c)(3). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for

the purposes of the motion." Fed. R. Civ. P. 56(e)(2). "Judges are not like pigs, hunting for truffles buried in briefs." United States v. Hoffecker, 530 F.3d 137, 162 (3d Cir. 2008) (internal quotations omitted).

II

The material facts are undisputed. East Norriton Township, a municipality in Montgomery County, Pennsylvania, regulates land use through a zoning ordinance. Under the ordinance, some of the land in the Township exists in a residential zoning district called "BR-1." A property in a BR-1 district may be used as a "single-family dwelling" by right, that is, a certificate of use and occupancy is issued as a matter of course.

A "single-family dwelling" is defined under the ordinance as a "building designed for and occupied exclusively as a dwelling for one family." East Norriton, Pa., Code § 205-5, https://www.ecode360.com/8114119. Relevant here, the definition of "family" includes "unrelated persons with disabilities living together as a functional family equivalent." Id.

In 2014, the zoning ordinance was amended to impose additional requirements for the owners of property seeking to operate a "group home" in a BR-1 district. The ordinance defines a "group home":

> A residential facility used as living quarters by any number of unrelated persons requiring special care, specifically designed to create a residential setting for the mentally and physically handicapped. The individuals may be either transient or permanent residents. Any number of handicapped persons, as defined in Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, have the right to occupy a dwelling unit in the same manner and to the same extent as any family unit.

Id.

A property in a BR-1 zoning district may be used as a group home only by special exception. To obtain an exception, the applicant must provide evidence that the planned group home will comply with a series of requirements set forth in the ordinance:

> A. A fire sprinkler system which complies with NFPA 13D (2007) shall be installed throughout the group home and any attached accessory buildings.
>
> B. A fire alarm system which complies with Chapter 11 of NFPA 72 (2007) shall be installed throughout the group home and any attached accessory structures.
>
> C. When applying for a group home permit, the applicant shall provide a dimensioned floor plan indicating the size of each room, including sleeping rooms, and identifying

-4-

>     the maximum number of residents who will
>     occupy each sleeping room, to demonstrate
>     that the home will not be overcrowded and in
>     compliance with all applicable building
>     codes.
>
>     D.  When applying for a group home permit,
>     the applicant shall provide a written
>     statement describing how the facility will
>     have adequate trained staff supervision for
>     the number of residents and their related
>     disability or disabilities.
>
>     E.  In place of the off-street residential
>     parking requirements for residential units,
>     a group home shall provide a minimum of four
>     off-street parking spaces. A group home with
>     more than four residents shall provide one
>     additional off-street parking space for
>     every two residents, or fraction thereof, in
>     excess of four residents. All parking spaces
>     shall measure no less than nine feet in
>     width and 18 feet in length, and a garage
>     shall not be counted as a parking space.
>
>     F.  Supervisory, counseling and medical
>     services shall be provided only to residents
>     of the group home, and no outpatient
>     services will be provided to individuals who
>     are not residents of the group home.
>
>     G.  A minimum of one nonresident (caretaker)
>     employee shall be on the premises at all
>     times and shall be readily available to
>     provide assistance to residents of the group
>     home.
>
>     H.  All nonresident (caretaker) employees
>     shall be qualified by training and/or
>     experience to provide supervision and care
>     to residents of the group home.
>
>     I.  If a group home is in a residential
>     district, an appearance shall be maintained
>     closely similar to nearby dwellings, and no
>     sign shall identify the use.

Id. at § 205-21.

Plaintiff Horizon House is a nonprofit organization that provides supportive services to individuals in Pennsylvania with intellectual disabilities. In late 2018, Horizon House contracted to purchase a three-bedroom single-family house on Stoney Creek Road in East Norriton. The house is located in a BR-1 zoning district.

As noted, prior to moving into a property in the Township, a property owner must obtain a use and occupancy certificate. The Township's zoning officer is responsible for reviewing a use and occupancy certificate application to determine if the proposed use comports with the allowed uses in the property's zoning district. If the application identifies a buyer or occupant as a commercial entity, the zoning officer customarily researches the buyer or occupant. If any questions over the legality of a proposed use arise during this process, the zoning officer consults with the Township solicitor.

On December 4, 2018, the seller, through its realtor, submitted to the Township an application for a certificate of use and occupancy on Horizon House's behalf. The certificate application stated that the property would be "owner occupied," and would not be rented or used as a group home. The zoning officer flagged Horizon House's application and reached out to seller's realtor, who in turn referred the zoning officer to Horizon House's website. Specifically, the zoning officer

reviewed the website's description of Horizon House's "community residential living services":

> Community residential living is provided in homes accommodating up to four individuals with in-home support available 24/7. Homes are licensed and monitored by Horizon House staff including quality improvement specialists. Using a multidisciplinary approach, staff members are involved in each resident's specific goals and outcomes. Every consideration is made to provide for an individual's preferences, including home decor, leisure time, meal planning, recreation, and therapeutic activities. Family participation is encouraged and welcomed.

Meanwhile, Horizon House through counsel sent a letter to the Township's solicitor, in which it stated, "[Horizon House] intends to use the house as a single-family dwelling for up to three disabled individuals."

Two days later, the Township solicitor responded to Horizon House's letter. She stated that based on the above description of Horizon House's services on its website, what Horizon House proposed for the Stoney Creek Road house constituted a group home under the zoning ordinance. Accordingly, the Township denied the application and directed Horizon House to file the necessary paperwork to request a special exception.

Horizon House nevertheless pushed ahead, completing the purchase in late January 2019. On March 8, 2019, Horizon

House filed a second application for a use and occupancy certificate, which again asserted that the property would be "owner occupied" and would not be rented or used as a group home.

Two weeks later, Horizon House filed the complaint in this case.  Shortly thereafter, this case was stayed so that the Township could rule on the application.  The Township eventually denied this second application as well.

In August 2019 Horizon House appealed the Township's denial of the second application to the Township's Zoning Hearing Board ("ZHB").  Horizon House argued that it was proposing to use the house as a single-family dwelling. Alternatively, it asked the Township to accommodate its proposed use by granting the special exception without requiring it to comply with the group home regulations.  While the appeal to the ZHB was pending, the Township's Board of Supervisors directed its Planning Commission to hold a public hearing on Horizon House's application and ultimately make a recommendation to the ZHB.  After a hearing at which representatives of Horizon House and the Township were heard, the Planning Commission recommended that the ZHB deny Horizon House's appeal.  The ZHB did so.

In December 2019 Horizon House appealed the ZHB's decision to the Court of Common Pleas of Montgomery County.  In September 2020 the Court found that the ZHB erred in finding

that Horizon House's proposal was not a single-family dwelling and ordered the ZHB to issue a use and occupancy certificate for the property. Both the Court and the ZHB relied on Pennsylvania law. The ZHB appealed the decision to the Commonwealth Court of Pennsylvania, with the Township later attempting to intervene in support of the ZHB. The Commonwealth Court quashed the appeal in July 2021.

On September 29, 2021, the Township issued the certificate of use and occupancy to Horizon House. Even though the issue of injunctive relief now appears to be moot, the issue of liability remains as Horizon House still seeks compensatory damages, nominal damages, and attorneys' fees arising from the Township's prior denials of Horizon House's applications for a certificate of use and occupancy.

III

Horizon House and the Township each move for summary judgment on the issue of the Township's liability under the FHAA. In 1988 Congress enacted the FHAA as "a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream." Hovsons, Inc. v. Twp. of Brick, 89 F.3d 1096, 1105 (3d Cir. 1996). The FHAA extended the coverage of the Fair Housing Act to protect people with disabilities:

> [I]t shall be unlawful--

>> (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
>
>> (A)  that buyer or renter,
>
>> (B)  a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
>
>> (C)  any person associated with that buyer or renter.

42 U.S.C. § 3604. Horizon House as a provider of housing for individuals with disabilities may maintain an action under this section, and the Township, as a municipality, may be liable for its zoning in violation of the FHAA. E.g., Cmty. Servs., Inc. v. Wind Gap Mun. Auth., 421 F.3d 170, 176 (3d Cir. 2005).

Horizon House argues that the Township has violated the FHAA in two ways. First, it asserts that the Township engaged in disparate treatment by treating Horizon House's proposed use of the Stoney Creek Road house as a group home under its zoning ordinance and thereby denying its application for a certificate of use and occupancy. Second, it maintains that the Township's zoning ordinance effects a disparate impact on individuals with disabilities.

To prevail on an FHAA claim under the disparate treatment theory, a plaintiff must prove that a "discriminatory

purpose was a 'motivating factor' behind the challenged action." Wind Gap, 421 F.3d at 177 (citation omitted).  The discriminatory purpose need not be "malicious or invidious." Id.  Rather, Horizon House only has to "show that a protected characteristic played a role in the defendant's decision to treat [it] differently."  Id.  If the plaintiff establishes that the challenged action is facially discriminatory, the burden shifts to the defendant to justify the disparate treatment by showing "no less restrictive course of action could be adopted." Sharpvisions, Inc. v. Borough of Plum, 475 F. Supp. 2d 514, 523 (W.D. Pa. 2007).  In turn, the plaintiff may rebut the defendant's showing by demonstrating that "other action could be taken."  Id.

Here, the Township's zoning ordinance is facially discriminatory.  "[S]tatutes that single out for regulation group homes for the handicapped are facially discriminatory." Larkin v. State of Mich. Dep't of Soc. Servs., 89 F.3d 285, 290 (6th Cir. 1996); see also Wind Gap, 421 F.3d at 180.  Under the ordinance, the Township issues use and occupancy certificates as a matter of course for single-family dwellings that house three unrelated individuals in BR-1 zoning districts.  By contrast, if that same single-family dwelling were to be used as "as living quarters by any number of unrelated persons requiring special care, specifically designed to create a residential setting for

-11-

the mentally and physically handicapped," the ordinance requires the owner, among other things, to expend funds for costly structural modifications, publicly disclose each proposed resident's disability, and provide around-the-clock on-site staffing regardless of resident need.  By its very terms, the Township's ordinance imposes significant burdens on the owners of properties in BR-1 zoning districts who seek to use their properties to provide housing to individuals with disabilities.

In resisting this straightforward analysis, the Township argues its ordinance does not discriminate against individuals with disabilities because it allows three unrelated individuals to live in a single-family dwelling in a BR-1 zoning district by right without additional requirements.  The Township insists the group home provision of the ordinance "affects only commercial enterprises seeking to operate a business in the Township."  Accordingly, it argues, "disabled individuals are treated exactly the same as non-disabled individuals," and the ordinance "does not have any impact on disabled individuals who seek to reside together."  This position is meritless.  Courts have long ferreted out the discriminatory intent behind "distinguishing 'family' homes from either 'residential board and care occupancies,' 'group facilities,' or 'community-based residential facilities,' each latter classification constituting a proxy for 'handicapped' status."  Wind Gap, 421 F.3d at 180.

To the extent the Township suggests that the ordinance only regulates homes for individuals who require "special care," such a characteristic is a naked proxy for handicapped status.

In its motion for summary judgment, the Township advances two additional reasons why it is not liable for violating the FHAA.  First, it contends it denied the certificate of use and occupancy because Horizon House made false statements in its application, specifically that the property would be "owner occupied," and not rented or used as a group home.  This assertion is belied by the record.  When the Township denied Horizon House's first certificate application, it was aware of Horizon House's plan to use the property as a single-family dwelling for up to three individuals.  Although the Township solicitor's denial letter makes a passing reference to "inconsistent information provided," the bulk of the denial letter makes clear that the application was being denied because the Township believed what Horizon House was proposing fell under the category of "group home."

Second, the Township takes the position that it is not liable for actions attributable to the ZHB such as the ZHB's denial of a special exception, the ZHB's defense of that denial in litigation before the Court of Common Pleas, and the ZHB's decision to appeal the adverse decision of that Court.  The Township misses the mark.  The ZHB's role was limited to

interpreting the ordinance under Pennsylvania law.  Horizon House maintains the Township's denial of the use and occupancy certificate through the zoning officer's application of its zoning ordinance violates the FHAA, or put another way, that the zoning ordinance itself violates the FHAA.  In sum, any decision on the part of the ZHB does not provide cover for the Township's violation of the FHAA.

The Township makes no attempt to justify its treatment of group homes for individuals with disabilities, that is, it does not argue that "no less restrictive course of action could be adopted."  E.g., Sharpvisions, 475 F. Supp. 2d at 523.  As it has not rebutted Horizon House's prima facie case, Horizon House has proven a violation of the FHAA.  See id.

V

Because the Township is liable for disparate treatment under the FHAA, the court need not address whether the Township's application of its zoning ordinance to group homes creates a disparate impact on individuals with disabilities.  Accordingly, Horizon House's summary judgment motion asserting liability under the FHAA, the Americans with Disabilities Act, and the Rehabilitation Act, will be granted, and the Township's summary judgment motion asserting no liability under the FHAA,

the Americans with Disabilities Act, and the Rehabilitation Act, will be denied.[2]

---

2. As mentioned above, Horizon House seeks compensatory damages, nominal damages, and attorneys' fees.  The Township argues in its summary judgment motion that Horizon House cannot sustain a claim for compensatory damages.  The court will leave the determination of damages, if any, for a later proceeding. See, e.g., Victory v. Berks Cnty., Civ. A. No. 18-5170, 2019 WL 5266147, at *17 n.218 (E.D. Pa. Oct. 17, 2019).