IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HORIZON HOUSE, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EAST NORRITON TOWNSHIP | : | NO. 19-1252 |

MEMORANDUM

Bartle, J.                                      September 8, 2022

On July 25, 2022, the court granted summary judgment
on liability in favor of plaintiff Horizon House, Inc. and
against defendant East Norriton Township and denied the
cross-motion of the Township for summary judgment.  The court
held that the Township had violated the Fair Housing Amendments
Act ("FHAA"), 42 U.S.C. §§ 3601 et seq., among other statutes,
when it required Horizon House to obtain a special exception
under its zoning ordinance for Horizon House's proposal to house
and provide supportive services for individuals with
disabilities in a single-family dwelling.[1]  Before the court is
the motion of the Township for reconsideration of the court's
grant of summary judgment in favor of Horizon House.

---

1.    Horizon House also asserted claims under the Americans
with Disabilities Act, 42 U.S.C. §§ 12132 et seq., and the
Rehabilitation Act, 29 U.S.C. §§ 794 et seq.  The same analysis
applies to those claims as it does to claims under the FHAA.
See, e.g., Barnabei v. Chadds Ford Twp., 125 F. Supp. 3d 515,
519 n.7 (E.D. Pa. 2015).

I

A motion for reconsideration may be granted only where the moving party can establish one of the following:  (1) there has been an intervening change in controlling law; (2) new evidence has become available; or (3) there is need to correct a clear error of law or to prevent manifest injustice.  Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  The Township does not contend that there has been a change in law or that there is newly available evidence.  Rather, it argues that there exists the need to correct a clear error of law.  The court recounts the facts relevant to the instant motion for reconsideration in the light most favorable to the Township, the nonmoving party in the underlying motion for summary judgment.  See, e.g., Interbusiness Bank, N.A. v. First Nat. Bank of Mifflintown, 328 F. Supp. 2d 522, 525 (M.D. Pa. 2004)

II

The Township regulates land use through its zoning ordinance.  The details of the ordinance are set forth more fully in the court's opinion on the underlying motion for summary judgment.  See Horizon House, Inc. v. E. Norriton Twp., Civ. A. No. 19-1252, 2022 WL 2916680, at *1-2 (E.D. Pa. July 25, 2022).  In short, land in certain residential zoning districts may be used as a single-family dwelling by right, that is, a

-2-

certificate of use and occupancy is issued as a matter of course.[2]  By contrast, a property owner must apply for a special exception to operate a "group home" in these districts.  The ordinance defines a "group home" in relevant part as a "residential facility used as living quarters by any number of unrelated persons requiring special care, specifically designed to create a residential setting for the mentally and physically handicapped."  East Norriton, Pa., Code § 205-5, https://www.ecode360.com/8114119.  To obtain the special exception to operate a group home, the applicant must provide evidence that its proposed facility will comply with a series of requirements, including structural modifications, public disclosure of each proposed resident's disability, and around-the-clock on-site staffing.

Horizon House is a Pennsylvania nonprofit that "provides supportive services to individuals with intellectual disabilities" in "residential homes in which the individuals receive supportive services necessary to live independently in the community and outside of institutions."[3]  One of its facilities is known as "Farm Road" and is located on the grounds

---

2.   Before moving into a property in the Township, a property owner must obtain a use and occupancy certificate.

3.   See Pl.'s Statement of Undisputed Material Facts ¶¶ 1,2, Doc. # 103-1.

of Norristown State Hospital.  Some of the residents of Farm
Road have histories of sexual misconduct.

In November 2018 Horizon House entered an agreement to
purchase a property on Stoney Creek Road in East Norriton.  On
December 4, 2018, the seller, through its realtor, submitted to
the Township an application for a certificate of use and
occupancy on Horizon House's behalf.  The application stated
that the property would be "owner occupied" and would not be
rented or used as a group home.  The zoning officer reached out
to seller's realtor, who in turn referred the zoning officer to
Horizon House's website.  Specifically, the zoning officer
reviewed the website's description of Horizon House's "community
residential living services."  Two days later, Horizon House
through counsel sent a letter to the Township's solicitor, which
stated that it "intends to use the house as a single-family
dwelling for up to three disabled individuals."

Later that month, the Township solicitor wrote to
Horizon House that the Township was denying Horizon House's
application.  The solicitor stated that based on the above
description on its website, "[Horizon House's] services fit
squarely within the Township's definition of 'group home'" under
the Township's zoning ordinance.  Accordingly, the solicitor
informed Horizon House that it would need to request a special
exception.

-4-

Horizon House completed the purchase of the property in January 2019.  On March 8, 2019, Horizon House submitted its second application for a use and occupancy certificate. The Township denied the second application as well and again instructed Horizon House to apply for a special exception.

On March 25, 2019, Horizon House filed its first complaint in this action.  It averred in part that it planned to use the property as a "home for up to three disabled people" and would be licensed for community residential rehabilitation services ("CRRS").  A CRRS facility offers "[t]ransitional residential programs in community settings for persons with chronic psychiatric disability. CRRS's provide housing, personal assistance and psychosocial rehabilitation to clients in nonmedical settings."  55 Pa. Code § 5310.6.  Under Pennsylvania law, "[a] client placed in [a CRRS facility] must . . . [b]e psychiatrically disabled."  § 5310.21.

Horizon House filed its third application on July 12, 2019.  It reiterated the material information from its prior two applications.  The Township denied the third application on July 17, 2019.  Horizon House appealed the Township's denial of the third application to the Township's Zoning Hearing Board ("ZHB").  In September 2019, while the appeal to the ZHB was pending, the Planning Commission held a hearing on Horizon

House's proposal.  The Planning Commission recommended that the ZHB deny Horizon House's appeal.  The ZHB ultimately did so.

In December 2019 Horizon House appealed the ZHB's decision to the Court of Common Pleas of Montgomery County. While Horizon House's appeal was pending, on January 31, 2020, Horizon House filed an amended complaint in this action.  It again alleged that it planned to use the property as a residence for up to three individuals with disabilities.  However, it modified its allegations regarding its proposed licensing for the property.  Instead of using the house as a CRRS, Horizon House intended to use it as a "community home for individuals with an intellectual disability or autism" pursuant to 55 Pa. Code §§ 6400 et. seq.  A community home is "[a] building or separate dwelling unit in which residential care is provided to one or more individuals with an intellectual disability or autism."  Id. at § 6404.4.

In September 2020 the Court of Common Pleas held that the ZHB erred in finding that Horizon House's proposal was not a single-family dwelling and ordered the ZHB to issue a use and occupancy certificate for the property.  The ZHB appealed the decision to the Commonwealth Court of Pennsylvania, with the Township later attempting to intervene in support of the ZHB. The Commonwealth Court quashed the appeal in July 2021.  On

September 29, 2021, the Township issued the certificate of use
and occupancy to Horizon House.

III

    The Township advances a single argument in support of
its motion for reconsideration.  It contends that Horizon House
intended to house "sex offenders" in the property in question.
Because "sexual behavior disorders" do not qualify as
disabilities under the Americans with Disabilities Act ("ADA"),
42 U.S.C. § 12211, the Township contends that Horizon House has
failed to establish that there is no genuine dispute of material
fact that it intended to provide housing solely for individuals
with disabilities.[4]

    The Township relies heavily on the internal emails of
the Horizon House staff in which they discuss their plans for
the property and the initial slate of residents who planned to

_____

4.   The court notes as a preliminary matter that the Township
never meaningfully challenged Horizon House's position that
intended for individuals with disabilities to live in its Stoney
Creek Road house in opposing Horizon House's motion for summary
judgment.  Its only argument against Horizon House's disparate
treatment claim was that its zoning ordinance did not treat
individuals with disabilities any differently.  See Doc. # 110
at 6-9.  It is true that the Township highlighted in its
statement of facts evidence in the record that purportedly
showed that Horizon House had plans to house individuals with
criminal histories that included sexual offenses at the house.
But it never squarely presented the argument that Horizon House
did not intend to house individuals with disabilities in the
argument section of its brief.  That being said, because the
Township made this argument in passing in its motion for summary
judgment, the court will address its merits.

-7-

live there.  The Township was not privy to any of these emails
until discovery took place in this lawsuit.

First, in a November 2018 email, a Horizon House
employee stated that the house was planned as a "step down"
facility from Farm Road.  As mentioned above, some of the
individuals who reside at Farm Road had previously committed
sexual misconduct.  The term "step down" facility as it was used
in the email means that the Stoney Creek Road house was to be a
location in which "individuals are coming from a more
restrictive environment" and will transition into a less
restrictive residential setting.

Second, in a February 12, 2019 internal email, a
Horizon House employee describes the plans for the property:
"This is the planned forensic step-down program with two current
[Office of Developmental Programs] Consolidated Waiver
participants transferring to this location once licensed."  The
email identified the participants as D.Y., S.B., and a "third
participant . . . still TBD."  D.Y. has been previously
convicted of the Pennsylvania offenses of corrupting a minor and
involuntary sexual deviate intercourse.

Third, on June 11, 2019, an internal Horizon House
email was distributed in which it reported the organization's
plans for the Stoney Creek Road property:  "The [property] was
acquired to support the expansion of forensic services for

-8-

individuals with sexual offending behaviors.  Stoney Creek Road
will function as a step down of the current services offered at
Farm Road."

Fourth, on September 4, 2019, another internal email
of Horizon House included a report that described the proposed
residents for the Stoney Creek Road house as well as a yet-
unacquired property in West Norriton.  D.Y. and S.B. were both
listed as proposed residents.  Under its description of S.B.,
the report stated, "The home will be geared to support people
who have engaged in some sexually problematic behavior and is
meant to serve as a step down to the more structured support
offered at Farm Road."  There is no dispute that sometime before
Horizon House presented its plans for the Stoney Creek Road
property at the public meeting before the ZHB, and ostensibly
after the September 4 email, Horizon House selected new tenants
for the property.  D.Y. and S.B. relocated elsewhere, and
Horizon House presented information on the newly selected
tenants at the ZHB hearing.

As mentioned above, the court granted Horizon House's
motion for summary judgment and denied the Township's motion for
summary judgment on the issue of liability under the FHAA.  See
Horizon House, 2022 WL 2916680, at *5.  The court held that the
Township's zoning ordinance was facially discriminatory because

it imposed significant financial and logistical burdens on those who sought to provide housing for individuals with disabilities.[5]

To prevail on its FHAA claim, Horizon House must demonstrate that it proposed to provide housing to "handicapped individuals." Yates Real Est., Inc. v. Plainfield Zoning Bd. of Adjustment, 404 F. Supp. 3d 889, 914 (D.N.J. 2019); see also 42 U.S.C. § 3602(h). "Handicap" under the FHAA is defined as follows:

> with respect to a person—
>
> (1) a physical or mental impairment which substantially limits one or more of such person's major life activities,
>
> (2) a record of having such an impairment, or
>
> (3) being regarded as having such an impairment.

§ 3602(h). Courts have treated the definition of "handicapped" under the FHAA as interchangeable with that under the ADA and the Rehabilitation Act. McKivitz v. Twp. of Stowe, 769 F. Supp. 2d 803, 821 (W.D. Pa. 2010). Relevant here, the ADA excludes "sexual behavior disorders" from the definition of "disability." 42 U.S.C. § 12211(b).

---

5. The court declined to rule on the issue of Horizon House's proof of damages, leaving the issue for a later proceeding. Horizon House, 2022 WL 2916680, at *6 n.2.

The Township argues that there is a genuine dispute of material fact as to whether Horizon House intended to use the Stoney Creek Road property to house solely individuals with disabilities.  It contends that internal emails among Horizon House staff show that it intended to house individuals with sexual behavior disorders.  Accordingly, because sexual behavior disorders do not qualify as disabilities under the Americans with Disabilities Act, it maintains that there is a genuine dispute of material fact as to whether Horizon House intended to provide housing for individuals with disabilities.

Taken together in the light most favorable to the Township, Horizon House's internal emails establish only that one of the proposed residents had a prior history of sexual misconduct.  Even so, an individual with a prior history of sexual misconduct may also have a disability that qualifies him or her as a "handicapped" person under the ADA and FHAA.  The ADA does not exclude from its protection all individuals who have a "sexual behavior disorder."  It simply states that such a disorder, on its own, is not a disability.  See § 12211.  An individual with both a sexual behavior disorder which is not considered a disability and a non-sexually-related condition which is considered a disability is entitled to the ADA's protection.  The Township has not cited any authority for the proposition that such individuals lose protection under

-11-

disability discrimination statutes.  The only case it cites,
Shaw v. Smith, 206 F. App'x 546 (7th Cir. 2006), is inapposite.
Shaw concerned an inmate who sought to participate in a prison's
youth awareness program.  The inmate conceded that he did not
have a physical or mental impairment that would be considered a
disability under the ADA.  Rather, he argued that he was
protected under the ADA because he was "regarded as" having an
impairment due to his sexual behavior disorder.  Id. at 547-48.

        In fair housing actions, "the issue of 'handicap' is
sometimes examined not only by reference to the characteristics
of the individuals in question, but also by reference to the
criteria for admission to the facility at issue." McKivitz, 769
F. Supp. 2d at 822; see also Wagner ex rel. Wagner v. Fair Acres
Geriatric Ctr., 49 F.3d 1002, 1010 (3d Cir. 1995).  It is
undisputed that Horizon House provides supportive services to
individuals with intellectual disabilities in residential
settings.  Moreover, the February 12, 2019 internal email of
Horizon House, which the Township cites, states that D.Y. and
S.B. were both under the care of Horizon House through
Commonwealth of Pennsylvania's Office of Developmental Program
Consolidated Waivers, "which provides medical and rehabilitative
services to individuals with disabilities." Cohen v. Chester
Cty. Dep't of Mental Health/Intell. Disabilities Servs., Civ. A.
No. 15-5285, 2016 WL 3031719, at *1 (E.D. Pa. May 25, 2016).

This program is available only to an individual who has an

intellectual disability, autism, or a developmental disability.

See Consolidated Waiver, Pa. Dep't of Human Servs.,

https://www.dhs.pa.gov/Services/Disabilities-

Aging/Pages/Consolidated-Waiver.aspx.[6]

       Furthermore, Horizon House's chief executive officer,

Jeff Wilush, attests in an affidavit Horizon House offered in

its opposition to the Township's motion for summary judgment

that D.Y. has a disability.[7]  Wilush states, "The services that

[Horizon House] provides to DY are funded through [the Office of

_____

6.    Horizon House cites to this website in its response to the
statement of undisputed facts in support of the Township's
motion for summary judgment.  Furthermore, the court may take
judicial notice of this eligibility criteria as "information . .
. publicly available on [a] government website[]."  Vanderklok
v. United States, 868 F.3d 189, 205 n.16 (3d Cir. 2017).

7.    The Township insists that Wilush's affidavit must be
disregarded as a "sham affidavit" pursuant to Jiminez v. All Am.
Rathskellar, Inc., 503 F.3d 247, 253 (3rd Cir. 2007).  In the
Township's view, Wilush's description of the services Horizon
House provides to D.Y. is "contradictory" to the following
testimony from Wilush's deposition:

       Q: Do you have any specific personal
       knowledge about either [D.Y.] or [S.B.]?

       A: I have not met either gentleman. I am
       vaguely familiar with their service needs
       given my responsibilities.

The court disagrees that Wilush's statement at his deposition
that he is "vaguely familiar" with D.Y.'s history contradicts
his later claim that he is familiar.  Accordingly, the court
will consider Wilush's affidavit in deciding the instant motion.

-13-

Developmental Programs] because DY has a developmental disability."[8]

        In sum, there is no genuine dispute of material fact that the Horizon House intended to provide housing at the Stoney Creek Road property solely for individuals with disabilities. Thus, there has been no clear error of law or manifest injustice to correct.  Accordingly, the motion of the Township for reconsideration of the court's July 25, 2022 Order granting summary judgment in favor of Horizon House on the issue of liability under the FHAA is being denied.

---

8.   The Township also places great emphasis on the record evidence showing that Horizon House originally intended to operate its Stoney Creek Road property as a CRRS facility.  This argument further undercuts the Township's contention that Horizon House intended to serve individuals who did not have disabilities because, as mentioned above, an individual may be placed in a CRRS facility only for the treatment of a psychiatric disability.  See 55 Pa. Code § 5310.21.

-14-